UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PARASOL FLAVORS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 09-3394** |
| **SNOWIZARD, INC.** | **SECTION: "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that "SnoWizard, Inc's Motion for Partial Summary Judgment as to Plaintiffs' Claims for Damages" is **GRANTED**.  (Document #41.)

**IT IS FURTHER ORDERED** that the "Motion for Partial Summary Judgment" of Parasol Flavors, LLC and Southern Snow Manufacturing Co., Inc. is **GRANTED**.  (Document #36.)

### I. BACKGROUND

Parasol Flavors, LLC (Parasol) and SnoWizard, Inc. (SnoWizard) are competitors in the business of selling flavoring concentrates for snowball shaved ice confections.  SnoWizard applied to the United States Patent and Trademark Office for federal trademark registrations of five marks in International Class 30: SNOSWEET, HURRICANE, KING CAKE, BUTTERED POPCORN, and GEORGIA PEACH.  Parasol and Southern Snow Manufacturing Co., Inc.

(Southern Snow) filed a complaint and an amended complaint against SnoWizard alleging fraudulent registration under federal and state law.  In the amended complaint, the plaintiffs added the trademarks PRALINE and MUDSLIDE to the federal claims and CAKE BATTER, DILL PICKLE, and BUTTERCREAM to the state claims.

On July 17, 2008, the president of SnoWizard filed application No. 77524703 for federal trademark registration for SNOSWEET for "sugar and sugar substitutes" and stated that SnoWizard had been using the mark in commerce since February 16, 2008.  Registration No. 3580056 was granted on February 24, 2009.  Parasol contends that SnoWizard made false statements regarding the use of the mark SNOSWEET and falsified a specimen showing the mark in use in order to procure the registration.  Parasol alleges that it was offering identical goods under the mark SNOW SWEET (two words) since the beginning of 2008, having changed an existing product's name from "SIMPLY SWEET" to "SNOW SWEET."  Parasol alleges that it is entitled to damages, pursuant to § 38 of the Lanham Act, 28 U.S.C. § 1120, for fraudulent procurement of registration and an order cancelling Registration No. 3580056, pursuant to § 37 of the Lanham Act, 28 U.S.C. § 1119.

Parasol alleges that SnoWizard applied for federal trademark registration for HURRICANE for "food flavoring" on May 13, 2008, and Registration No. 35402767 was granted on December 2, 2008.  SnoWizard declared that it was the owner of the trademark HURRICANE and had the right to use the mark in commerce.  Parasol alleges that SnoWizard sells a variety of non-nutritional flavoring concentrates, including HURRICANE, for shaved ice confections, but not for food flavoring goods.  Parasol alleges that HURRICANE is a generic

identifier for the fruit-punch flavor imitating the generic HURRICANE beverage sold all over the French Quarter in New Orleans. Parasol alleges that SnoWizard was aware that Parasol, and other vendors sold generic HURRICANE snowball flavoring concentrate for several years, yet SnoWizard made false statements declaring its right to the mark HURRICANE. Parasol seeks damages under § 1120 and cancellation of the registration under § 1119.

Parasol alleges that SnoWizard applied for federal trademark registration for KING CAKE as a food flavoring on May 2008, and application No 77473810 was approved for publication and issue on April 17, 2009. Parasol argues that SnoWizard falsely stated that it used the mark for food flavoring since November 30, 1996. Parasol alleges that SnoWizard did not use the mark for flavoring shaved ice confections prior to 2008. Moreover, Parasol alleges that KING CAKE is a generic and functional identifier of a snowball flavoring concentrate, which it and others have sold over several years. Parasol seeks damages and the cancellation or prevention of the registration for KING CAKE.

Parasol alleges that SnoWizard filed for federal trademark registration for food flavorings for BUTTERED POPCORN on April 24, 2008, and application No. 77457380 is pending for registration. SnoWizard stated that it first used BUTTERED POPCORN on May 8, 2002, showed a specimen of its use for non-nutritional flavoring concentrate for shaved ice confections. SnoWizard's president filed a sworn affidavit on February 10, 2009, that a company called Ronald Reginald's offered "Buttered Popcorn Flavor" as a food flavoring since January 1, 2003. On February 23, 2009, the Patent and Trademark Office rejected the trademark as merely descriptive. In response on March 31, 2009, SnoWizard amended the description of

goods to be "flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections." Parasol alleges that SnoWizard's statements were fraudulent and that it intended to obtain a registration to which it was not entitled. Parasol seeks damages and cancellation or prevention of the registration.

Parasol alleges that SnoWizard applied for federal trademark registration for GEORGIA PEACH on May 12, 2008, in application No. 77471426. SnoWizard stated that its first use in commerce was May 31, 1988, and submitted a label from a bottle of flavoring concentrate as a specimen of use. On August 12, 2008, the Patent and Trademark Office rejected the trademark GEORGIA PEACH as merely descriptive. Parasol alleges that it has suffered damages as a result of SnoWizard's attempt to procure the federal trademark registration by fraud and seeks damages and an order preventing such registration.

The plaintiffs contend that SnoWizard filed application No. 77474648 on May 15, 2008, for federal trademark registration for PRALINE. SnoWizard stated that it started using the trademark on May 31, 1985. On August 12, 2008, the Patent and Trademark Office rejected PRALINE as merely descriptive. The plaintiffs contend that SnoWizard made false statements to obtain a registration to which it was not entitled. The plaintiffs seek damages and an order preventing such registration.

The plaintiffs contend that SnoWizard applied for federal trademark registration for MUDSLIDE on July 17, 2008 in application No. 77524270. SnoWizard stated that its first use for MUDSLIDE was April 6, 2007. The application for registration was rejected on October 23, 2008 as merely descriptive. The plaintiffs contends that SnoWizard did not offer or sell

MUDSLIDE until 2008 and that it was aware that others sold MUDSLIDE before SnoWizard offered the flavor concentrate. The plaintiffs seek damages and an order preventing the registration.

In addition to the federal claims, Parasol alleges that SnoWizard violated Louisiana trademarks law and the Louisiana Unfair Trade Practices Act, Louisiana Revised Statute 51:1405 *et seq*. Parasol alleges that it was first aware of the false assertion of federal and state trademarks when SnoWizard sent a "cease and desist letter" to Parasol on April 22, 2009. Parasol alleges that it is suffering damages as a result of the false claims of owning trademarks and false claims of trademark infringement for the trademarks.

SnoWizard filed a counterclaim for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq*. and for trademark infringement, unfair competition, and dilution of trademarks under Louisiana Civil Code art. 2315, La. Rev. Stat. 51:211, and La. Rev. Stat. 51:223.1. The claims include Parasol's use of the mark SNOW SWEET, HURRICANE, KING CAKE, BUTTERED POPCORN, GEORGIA PEACH, PRALINE, MUDSLIDE, CAKE BATTER, DILL PICKLE, and BUTTERCREAM.

SnoWizard filed a "Motion for Partial Summary Judgment as to Plaintiff's Claims for Damages," and Parasol filed a "Motion for Partial Summary Judgment" to dismiss counterclaims implicating the following trademarks for flavor concentrates: HURRICANE, PRALINE, KING CAKE, BUTTERED POPCORN, GEORGIA PEACH, DILL PICKLE, and BUTTERCREAM. SNOSWEET is not at issue in this motion, and SnoWizard has voluntarily dismissed the counterclaims for MUDSLIDE and CAKE BATTER.

5

## II. DISCUSSION

### A. Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B. SnoWizard's motion for partial summary judgment

SnoWizard seeks a partial summary judgment against Parasol and Southern Snow on their claims for damages for the procurement of trademark registrations under § 38 of the Lanham Act, 15, U.S.C. § 1120 and for unfair trade practices under the Louisiana Unfair Trade Practices Act, La. Rev. Stat. 51:1405 *et seq*.[1] SnoWizard argues that Parasol and Southern Snow

---

[1] SnoWizard's partial motion for summary judgment does not include the claims for cancellation or prevention of federal trademark registration under § 37 of the Lanham Act, 15 U.S.C. § 1119.

have not suffered a cognizable injury or ascertainable loss as a result of SnoWizard's actions in obtaining the registration.  SnoWizard argues that mere speculation and educated assumption of the facts are insufficient to establish the element of damages. SnoWizard offers the deposition testimony of Donovan Drewes, the owner of Parasol; Milton Wendling, Southern Snow's general manager; and John Hagood, Southern Snow's president, to show that neither Parasol nor Southern Snow can produce evidence that it has suffered any quantifiable damages as a result of SnoWizard's applications for trademark registration.

>Section 1120 provides:

>**Civil liability for false or fraudulent registration**
>     Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

>The Louisiana Unfair Trade Practices Act provides:

>**§ 1409.  Private actions**
>     A.  Any person who suffers any ascertainable loss of money or movable property corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. . . .

>Parasol and Southern Snow argue that summary judgment is not appropriate because there is an unresolved question of fact as to whether they have incurred damages.  Parasol and Southern Snow have not produced evidence of the existence of a genuine issue for trial on the essential element of cognizable injury or ascertainable loss.  Parasol and Southern Snow state that they "have made the business decision not to pull their customers and potential customers

into this litigation by surveying them or calling them as witnesses, and whatever damages that therefore cannot be proved will just have to be unproved and possibly not recovered." Accordingly, there are no disputed issues of material fact, and SnoWizard is entitled to judgment as a matter of law on the claims under 15 U.S.C. § 1120 and La. Rev. Stat. 51:1405.

**C. The plaintiffs' motion for partial summary judgment**[2]

The plaintiffs contend that no one has exclusive rights to the names HURRICANE, PRALINE, KING CAKE, BUTTERED POPCORN, GEORGIA PEACH, DILL PICKLE, and BUTTERCREAM. The plaintiffs contend that the seven trademarks, are not protectable because they are generic, functional, and descriptive as the necessary identifiers for the flavor concentrates. They argue that the flavor-concentrates are generic because they are the names by which the goods are called, they function as the only reasonable means for specifying which goods are being purchased, and they are descriptive of the flavor of the snowball that results when the goods are used as directed. The plaintiffs assert that only one of the seven marks, HURRICANE, was granted registration and argue that SnoWizard's mark is invalid because both Parasol and Southern Snow sold HURRICANE flavor concentrate for many years before SnoWizard applied for its trademark. Alternatively, the plaintiffs contend that, even if it is not established that the registered mark HURRICANE is invalid, summary judgment is proper because there is no likelihood of confusion because Parasol and Southern Snow sold their goods with the actual source clearly identified.

---

[2] Parasol and Southern Snow do not put forth arguments or authority in support of the dismissal of SnoWizard's counterclaims under Louisiana law.

To prevail on a trademark infringement claim, the counterclaimants must show two things: "they must establish ownership in a legally protectable mark" and "they must show infringement by demonstrating a likelihood of confusion." Bd. of Supervisors for La. State v. Smack Apparel, 550 F.3d 465, 474 (5th Cir. 2008).

"The Lanham Act provides that a trademark may be 'any word, name, symbol, or device, or any combination thereof' that is used or intended to be used 'to identify and distinguish' a person's goods 'from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" Bd. of Supervisors for La. State v. Smack Apparel, 550 F.3d at 475 (quoting 15 U.S.C. § 1127).  "A mark need not be registered in order to obtain protection because ownership of trademarks is established by use, not by registration." Id. (internal quotation and citation omitted).  "The protectability of unregistered marks is governed generally by the same principles that qualify a mark for registration under the Lanham Act." Id. "The key is whether the mark is capable of distinguishing the applicant's goods from those of others." Id. (internal quotation and citation omitted).

"Marks are generally classified as (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." Id. "[G]eneric marks–those that refer to the genus of which the particular product is a species--are not registrable as trademarks." Two Pesos, Inc. v. Taco Cabana, Inc., 112 S.Ct. 2753, 2757 (1992) (internal quotation and citation omitted). "Marks which are merely descriptive of a product are not inherently distinctive. When used to describe a product, they do not inherently identify a particular source, and hence cannot be protected." Id. "However, descriptive marks may acquire the distinctiveness which will allow them to be

9

protected under the Act . . . if it has become distinctive of the applicant's goods in commerce." Id. "This acquired distinctiveness is generally called 'secondary meaning.'" Id. "[L]iability under §43(a) requires proof of the likelihood of confusion." Id. "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." Id.

"If a mark has been registered with the United States Patent and Trademark Office, the defendants in an infringement action do bear the burden of overcoming the presumption that the mark is not generic." Reese Pub. Co., Inc. v. Hampton Intern. Communications, Inc., 620 F.2d 7, 11 (2nd Cir. 1980). If the mark is not registered, the burden is on plaintiff to prove that the mark is a valid trademark. Id. In this case, on the mark HURRICANE is registered, and six of the marks are not registered.

### 1. Non-registered protectable trademarks

Considering all of the submissions in support of its motion for partial summary judgment, the court concludes that SnoWizard has not carried its burden to prove that the six non-registered marks are valid trademarks. In order to show that the trademarks are not generic, SnoWizard "must show that the primary significance of the term in the minds of the consuming public is not the product but the producer." A.J. Canfield Co. v. Honickman, 808 F.2d 291, 299 (3rd Cir. 1986) (quoting Kellogg Co. v. Nat'l Biscuit Co., 59 S.Ct. 109 (1938)); see also American Heritage Life Ins. Co. v. Heritage Life Ins., 494 F.3d 3, 12 (5th Cir. 1974). "[T]he primary significance test is met even if the primary significance of a mark is not directly the producer but rather if the primary significance of the mark to consumer is to identify a product or service

which emanates from a particular source, known or unknown, for it still provides the assurance to the public that the product is of uniform quality and performance." Id. at 300 (internal quotation and citation omitted).  The primary significance test is "not satisfied if the product that emanates from a single source is not only a product brand but is also a product genus." Id. at 301.

The six unregistered terms as applied to flavor concentrates are generic because SnoWizard has chosen the generic names of the class of the relevant product genera, *i.e.* pralines, king cakes, buttered popcorn, peaches from Georgia, dill pickles, and buttercream frosting or ice cream, as the name of its brand of products.  SnoWizard's brand name does not signify to the consumer that it emanates from SnoWizard as its source.  The generic terms are not protectable under federal law  because SnoWizard's competitors need to describe their flavors using these terms more than SnoWizard needs the terms to distinguish their flavors from others.  See   A.J. Canfield Co. v. Honickman, 808 F.2d at 304.

**2.  The registered mark HURRICANE**

Because the term HURRICANE is a registered trademark, Parasol and Southern Snow bear the burden of overcoming the presumption that the mark is not generic in order to obtain protection under trademark law.  It is undisputed that HURRICANE identifies a genus or class of drink sold in the French Quarter in New Orleans, of which the flavor concentrate is a member. See Urgent Care Inc. v. South Mississippi Urgent Care, 289 Fed. Appx. 741, 743 (5th Cir. 2008). The term "connotes the basic nature" of the flavor rather than the individualized characteristic of SnoWizard's flavor concentrate.  See id.  Accordingly, the generic term HURRICANE is not

eligible for protection under trademark law.

### III. CONCLUSION

Accordingly, Parasol and Southern Snow have not put forth evidence that there are disputed issues of material fact on the elements of cognizable injury or ascertainable loss, and SnoWizard is entitled to judgment as a matter of law dismissing plaintiffs' claims for damages for the procurement of trademark registration under 15 U.S.C. § 1120 and La. Rev. Stat. 51:1405.

Moreover, there are no disputed issues of material fact, and Parasol and Southern Snow are entitled to summary judgment as a matter of law, dismissing SnoWizard's counterclaims asserting infringement of federal law regarding the registered mark, HURRICANE, and the unregistered marks, PRALINE, KING CAKE, BUTTERED POPCORN, GEORGIA PEACH, DILL PICKLE, and BUTTERCREAM.

New Orleans, Louisiana, this  25th  day of February, 2010.

_____
MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE